UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ADOREME, INC., a corporation, also d/b/a
ADORE ME and ADOREME.COM, CORP.,

Defendant.

Case No. _____

**COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 5 of the Restore Online Shoppers' Confidence

Act ("ROSCA"), 15 U.S.C. § 8404, to obtain permanent injunctive relief, rescission or

reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

monies, and other equitable relief for Defendant's acts or practices in violation of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a), and Section 4 of ROSCA, 15 U.S.C. § 8403, in connection with

Defendant's online marketing of apparel.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, 15 U.S.C. §§ 45(a), 53(b), and Section 5(a) of ROSCA, 15 U.S.C. § 8404(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2), (c)(3),

and (d), and 15 U.S.C. § 53(b).

1

**PLAINTIFF**

4.    The FTC is an independent agency of the United States Government created by

statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also

enforces ROSCA, 15 U.S.C. §§ 8401-05.  ROSCA prohibits the sale of goods or services on the

Internet through negative option marketing without meeting certain requirements to protect

consumers.  A negative option is an offer in which the seller treats a consumer's silence – their

failure to reject an offer or cancel an agreement – as consent to be charged for goods or services.

5.    The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act and ROSCA and to secure such equitable relief as

may be appropriate in each case, including rescission or reformation of contracts, restitution, the

refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b),

56(a)(2)(A), and 8404.

**DEFENDANT**

6.    Defendant AdoreMe, Inc. ("AdoreMe"), also doing business as Adore Me and

AdoreMe.com, Corp., is a Delaware corporation with its principal place of business at 499

Seventh Avenue, 19th Floor, New York, New York.  AdoreMe transacts or has transacted

business in this district and throughout the United States.

**COMMERCE**

7.    At all times material to this Complaint, Defendant has maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

8.      Since at least January 2012, Defendant has advertised, marketed, promoted, offered for sale, or sold apparel to consumers throughout the United States and elsewhere.  In connection with these activities, Defendant has misrepresented that consumers could use accumulated store credits "anytime" to purchase goods from Defendant and failed to provide simple, or even reasonable, ways for consumers to permanently stop Defendant's recurring charges.

### Background

9.      Defendant sells apparel online at adoreme.com and via a mobile Internet app.  It derives the vast majority of its revenue from sales to consumers enrolled in a membership program called the "VIP" program.

10.     Membership in Defendant's VIP program offers consumers a discount on an initial purchase, discounted prices on apparel purchases, a free apparel set after five full-price purchases, free and unlimited product exchanges, free shipping for U.S. customers, and access to a "free personalized online showroom" of apparel for sale, including "VIP only" apparel, with "[n]o obligation to buy every month, [and] no membership fee."

11.     Consumers join the VIP program on a negative option basis.  Every month, Defendant charges each program member $39.95 – unless, in the first five days of each month, that member "shops" and buys apparel from Defendant or affirmatively clicks a button on Defendant's website or mobile Internet app to "skip" buying that month.  If a VIP does not "shop or skip" during that five-day period, Defendant charges her or him for a $39.95 "store credit"

3

that can be used to purchase Defendant's apparel.  Consumers who do not join the VIP program may purchase items individually from Defendant at higher prices on a "Pay As You Go" basis.

**<u>Defendant Misrepresented that Store Credit Can Be Used "Anytime"</u>**

12.     From at least January 2012 to 2016, to induce consumers to join the VIP program and buy apparel, Defendant advertised that store credit could be used "anytime" to purchase its apparel.  Defendant disseminated or caused to be disseminated advertisements, including but not limited to those attached as Exhibits A through D, containing such claims.  For example:

A.     The checkout cart or "shopping bag" of Defendant's website advertised, in pertinent part:  "Each month just 'skip' before the 5th (and pay nothing) or be charged a $39.95 credit you can use anytime[.] ☺"  Ex. A.

B.     A list of Frequently Asked Questions on Defendant's website advertised, in pertinent part:  "**Q: What if I forget to skip the month?  A: No problem!**  You'll be charged a store credit to be used for any future purchase."  Ex. B (emphasis in original).

C.     A graphic in Defendant's promotional emails advertised, in pertinent part, "If you do not make a purchase or skip the month by the 5th, **you'll be charged a $39.95 store credit** that can be used anytime to buy anything on Adore Me."  Ex. C (emphasis in original).

D.     A package insert mailed to VIPs advertised, "Your only obligation as a VIP is to visit your showroom between the 1st and the 5th of each month, then either **shop <u>or</u> skip the month**.  If you don't take action, you'll be charged a $39.95 store credit to shop with anytime on AdoreMe.com[.]"  Ex. D (emphasis in original).

13.     Although Defendant claimed in writing that store credit can be used "anytime" to purchase its apparel, Defendant's written business policy for "Using Credits" or "Using Store Credits" from at least January 2012 to May 20, 2016 provided that "[u]nused [store] credits will be forfeited if your Adore Me membership is terminated for any reason—whether you choose to cancel or if Adore Me cancels your membership for any reason."

14.     Defendant did not clearly and conspicuously disclose the store credit forfeiture policy to consumers before enrolling consumers in the VIP program.  Consumers were able to enroll in the VIP program without seeing this policy or a description or disclosure thereof.  The policy appeared over 1,000 words into the terms and conditions of the VIP program, a legal document accessible from a hyperlink at the bottom of Defendant's website.  The hyperlink to this document often appeared "below the fold," *i.e.*, below the portion of a web page that a user can see on a typical computer monitor without scrolling down the page.  Similarly, the policy itself appeared "below the fold," so consumers typically would have to scroll down the terms and conditions of the VIP program several times to find it.

15.     From at least May 2015 to May 2016, Defendant enforced the policy described in Paragraph 13 by taking unused store credit amounts accumulated by consumers who cancelled their memberships in the VIP program, deeming such store credit to be forfeited upon cancellation.

16.     From at least May 2015 to May 2016, Defendant also enforced the policy described in Paragraph 13 by taking unused store credit amounts accumulated by consumers who initiated chargebacks with financial institutions to dispute and reverse transactions with Defendant.  After learning of such chargebacks, Defendant cancelled those consumers'

memberships in the VIP program and deemed their unused store credit to be forfeited. Defendant thereby voided store credit that consumers paid for and otherwise could have used to purchase Defendant's apparel.

17.      Enforcing their store credit forfeiture policy, Defendant forfeited over $1.8 million from consumers.

18.      Despite discontinuing the practice of taking cancelling VIPs' unused store credit amounts in May 2016, Defendant has not made full refunds to all consumers.

**Defendant Made It Difficult to Cancel the VIP Program**

19.      From at least January 2012 to January 2016, Defendant made it difficult for consumers to cancel their memberships in the VIP program.  Defendant made cancellation difficult in multiple ways, including:  (1) limiting the means consumers could use to submit cancellation requests; (2) dramatically and chronically under-staffing their customer service department, making it difficult to submit or get a response to such requests; (3) putting consumers through drawn-out cancellation request processes; and/or (4) in certain situations, refusing to accept, process, or act on cancellation requests.

20.      First, Defendant limited the means that consumers could use to submit requests to cancel their VIP program memberships.  From 2012 to at least February 2014, Defendant directed consumers to make such cancellation requests by phone, including this instruction in their written business policy for "Membership Cancellations."  During this time, consumers could not cancel the VIP program on the website they used to enroll in the program.  Thereafter, from at least February 2015 and afterwards, Defendant directed consumers to make cancellation requests on Defendant's website, including this instruction in their written business policy for

"VIP Membership Cancellations."  Between 2012 and 2016, Defendant repeatedly declined to accept, process, or act on cancellation requests made by consumers by one means and directed them to make cancellation requests by other means, thereby creating a barrier to cancellation.

21.     Second, from 2012 to January 2016, many consumers called Defendant's customer service phone number to cancel their VIP memberships, and had difficulty reaching Defendant's customer service agents despite calling numerous times.  Defendant subjected consumers to long response times both by email and phone.  For example, on February 10, 2014, the average waiting time for a phone call answered by Defendant's customer service agents was over 11 minutes.  By December 10, 2015, this figure reached over 32 minutes.

22.     Third, at various points from 2012 to 2016, Defendant put consumers through drawn-out cancellation processes.  For example, Defendant introduced an online cancellation tool in September 2014.  This tool required consumers to complete a five-question "Membership Quiz" about the VIP program and required them to navigate three other webpages promoting or explaining the VIP program before Defendant would accept cancellation requests.

23.     Further, at varying points from 2012 to 2016, Defendant declined to accept, process, or act on cancellation requests submitted by consumers in certain situations for other reasons.  In some instances, Defendant declined to cancel consumers' VIP memberships if they had orders being processed, or orders in transit.  Additionally, if VIPs opted to take a "payment vacation" and thus avoid having to make a "shop or skip" decision or pay for store credit for up to two consecutive months, from at least February 2014 to February 2015, Defendant would not accept, process, or act on cancellation requests made during the "payment vacation."  Defendant

prohibited VIPs from cancelling their memberships until their "payment vacations" ended, including this instruction in its written business policy for "Membership Cancellations."

24.     Additionally, between May 2015 and May 2016, Defendant advised some consumers that their VIP memberships could be cancelled, but their store credit would not be refunded, thereby creating another barrier to cancellation.

25.     Through the means described in Paragraphs 19-24 above, and/or through other means, from at least 2012 to January 2016, Defendant did not provide consumers with a simple mechanism to permanently stop recurring charges for the VIP program.

## VIOLATION OF THE FTC ACT

26.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

27.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### Misrepresentation of Store Credit Policy

28.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of apparel, through the means described in Paragraphs 12, Defendant represented, directly or indirectly, expressly or by implication, that consumers could use AdoreMe store credit anytime.

29.     In truth and fact, in numerous of those instances, consumers could not use store credit anytime because Defendant forfeited the unused store credit of consumers who cancelled their VIP program memberships, and consumers whose VIP program memberships Defendant

cancelled after those consumers initiated chargebacks.

30.     Therefore, Defendant's representation described in Paragraph 28 is false, and constitutes a deceptive act or practice, in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATION OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

31.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401 *et seq.*, which became effective on December 29, 2010.  In passing ROSCA, Congress declared that "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

32.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller, among other things, provides a simple mechanism for a consumer to stop recurring charges.  *See* 15 U.S.C. § 8403.

33.     The TSR defines a negative option feature as a provision in an offer or agreement to sell or provide any goods or services "under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(u).

34.     As described in Paragraphs 9 to 11 above, Defendant has advertised and sold apparel through a negative option feature as defined by the TSR.  16 C.F.R. § 310.2(u).

35. Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## COUNT II

### Illegal Negative Option Marketing:

### Failure to Provide Simple Mechanisms for Consumers to Stop Recurring Charges

36. In numerous instances, in connection with charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as described in paragraphs 19-25 above, Defendant failed to provide simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

37. Defendant's acts or practices, as described in Paragraph 36 above, violate Section 4 of ROSCA, 15 U.S.C. § 8403.

## CONSUMER INJURY

38. Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act and ROSCA. In addition, Defendant has been unjustly enriched as a result of its unlawful acts or practices. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

39. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable

10

jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and

remedy any violation of any provision of law enforced by the FTC.

## **PRAYER FOR RELIEF**

40.     Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C.

§ 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, and the Court's own equitable powers, requests

that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act
        and ROSCA by Defendant;

B.      Award such relief as the Court finds necessary to redress injury to
        consumers resulting from Defendant's violations of the FTC Act and
        ROSCA, including but not limited to, rescission or reformation of
        contracts, restitution, the refund of monies paid, and the disgorgement of
        ill-gotten monies; and

C.      Award Plaintiff the costs of bringing this action, as well as such other and
        additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID SHONKA
Acting General Counsel

Dated: 11/20/2017

Alejandro G. Rosenberg
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mailstop CC-9528
Washington, D.C. 20580
(202) 326-2698 (phone)
(202) 326-3197 (fax)
arosenberg@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION

12

# EXHIBIT A



# EXHIBIT B

ADORE ME

Shopping Bag    Continue Shopping          Choose Your Way To Shop          Order Summary

Maude Contour

**$39.95 VIP**
$49.95 Reg.

Bra Size:        Maude
Panty Size:    Maude
Quantity:      1

Edit    Sav

Free Shipping: 3-5 Business Days

Maude Contour

**$39.95 VIP**
$49.95 Reg.

Bra Size:        Maude
Panty Size:    Maude
Quantity:      1

Edit    Sav

Free Shipping: 3-5 Business Days

Maude Contour

**$39.95 VIP**
$49.95 Reg.

Bra Size:        Maude 34C
Panty Size:    Maude Cheeky M
Quantity:      1

Edit    Save For Later

Free Shipping: 3-5 Business Days



# FAQs                                                    ×

**Q: Do I have to buy something every month?**
A: **Nope!** Just skip the month if you don't feel like shopping.

**Q: Will I be charged every month?**
A: **Not at all!** Simply shop or skip if you don't want a credit.

**Q: Will I be reminded to shop or skip?**
A: **Yes!** We will send you email reminders.

**Q: What if I forget to skip the month?**
A: **No problem!** You'll be charged a store credit to be used for any future purchase. If you'd like a refund, just give us a call within 30 days.

**Q: Can I change my mind?**
A: **Sure!** You can unsubscribe, then shop Pay As You Go if you'd prefer. You're welcome to rejoin the VIP membership later to enjoy the benefits.

**Other Questions?**
Call us anytime. **1.800.433.2367**
Real agents, no robots.

Select your checkout
method to continue.

Continue Checkout

Need Help?
Our friendly Customer Care team is
always here to help. **1.800.433.2367**

FAQ ›

——— OR ———

PAY AS YOU GO

PERKS
Free shipping & exchanges.

# EXHIBIT C



MARCH

Your
Showroom
Is Ready!

SHOP NEW ARRIVALS >

Aurora



THE SHORE
THING

Strappy bikinis and color-block
swimsuits are a seriously
shore thing.

SHOP SWIM >

Mirra

New Arrivals



New **Sleepwear** Styles          Pretty New **Plus**

SHOP NEW ARRIVALS >

DON'T FORGET TO **PICK** OR **SKIP**!



SHOP                    OR                    SKIP

All styles from **$39.95**              There is no obligation
+ free shipping & exchanges              to purchase.

If you do not make a purchase or skip the month by the 5th, **you'll be charged a
$39.95 store credit** that can be used anytime to buy anything on Adore Me.



PANTY PARTY!
Any
**6/$39**.95

Automatically applied
at checkout*

SHOP PANTIES >

Della Cheeky

*This is a VIP-only party! Join the VIP membership to start enjoying
this deal. Offers cannot be combined.

# EXHIBIT D



Enjoy your
## EXCLUSIVE **VIP** PERKS

**$10 OFF** any set, any time!

Every **6th set** is on us!

Exclusive access to **VIP only** sets, sales, and collections

No obligation to buy every month, no membership fee

### Don't Forget To Visit Your Showroom Each Month!

Your only obligation as a VIP is to visit your showroom between the 1st and the 5th of each month, then either **shop or skip the month**. If you don't take action, you'll be charged a $39.95 store credit to shop with anytime on AdoreMe.com

QUESTIONS? WE'RE HERE TO HELP!

Call us **1.800.433.2367** or email **help@adoreme.com**
Real people, no robots!