UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 11-30-17

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ADOREME, INC., a corporation, also d/b/a
ADORE ME and ADOREME.COM, CORP.,

    Defendant.

Case No. 17-CV-9083 (ALC)

**STIPULATED ORDER FOR
PERMANENT INJUNCTION
AND MONETARY JUDGMENT**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ( "Complaint"), for a permanent injunction,

and other equitable relief in this matter, pursuant to Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and Section 5 of the Restore Online Shoppers'

Confidence Act ("ROSCA"), 15 U.S.C. § 8404.

The Commission and Defendant stipulate to the entry of this Stipulated Order for

Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this

action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.    This Court has jurisdiction over this matter.

2.    The Complaint charges that Defendant participated in deceptive acts or practices in

violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with Defendant's online

marketing of lingerie and other apparel.

Page 1 of 22

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as

specifically stated in this Order.   Only for purposes of this action, Defendant admits the facts

necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28

U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree

to bear its own costs and attorney fees.

5.      Defendant waives all rights to appeal or otherwise challenge or contest the validity of this

Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      **"Billing Information"** means any data that enables any person to access a customer's

account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage

loan account, or debit card.

B.      **"Charge,"** **"charged,"** or **"charging"** means any attempt to collect money or other

consideration from a consumer, including but not limited to causing Billing Information to be

submitted for payment, including against the consumer's credit card, debit card, bank account,

telephone bill, or other account.

C.      **"Clear(ly) and conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e.,

easily noticeable) and easily understandable by ordinary consumers, including in all of the

following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be

made through the same means through which the communication is presented.   In any

communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      **"Close Proximity"** means immediately adjacent to the triggering representation.   In the case of advertisements disseminated verbally or through audible means, the disclosure shall be

made as soon as practicable after the triggering representation.

E.  **"Defendant"** means Adoreme, Inc., d/b/a Adore Me and Adoreme.com, Corp., and its successors and assigns.

F.  **"Eligible Customer"** shall mean any customer who forfeited a store credit under Defendant's store credit forfeiture policy between May 1, 2015 and May 19, 2016 and has not previously received a full refund or chargeback of that Forfeited Store Credit.

G.  **"Forfeited Store Credit"** shall mean monies paid by Defendant's customers for unused store credit that Defendant determined was forfeited between May 1, 2015 and May 19, 2016, and has not refunded to those customers or been subject to a chargeback in relation to those customers by the entry date of this Order.

H.  **"Negative Option Feature"** means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

I.  **"State Settlement Agreement"** shall mean any written agreement between Defendant and any state that provides for the refund of Forfeited Store Credit to Eligible Customer(s) no more than twelve (12) months from the entry date of this Order.

J.  **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of any product, service, plan, or program by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

# ORDER

## I.  PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.     That a consumer can use store credit at any time to purchase any good or service;

B.     Any cost to the consumer to purchase, receive, use, or return the initial good or service;

C.     That the consumer will not be Charged for any good or service;

D.     That a good or service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

E.     That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

F.     The purpose(s) for which the consumer's Billing Information will be used;

G.     The date by which the consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on the Negative Option Feature;

H.     That a transaction has been authorized by the consumer;

I.     Any material aspect of the nature or terms of a refund, cancellation, exchange, purchase

policy, store credit policy, forfeiture policy, or repurchase policy for the good or service; or

J.      Any other material fact.

Compliance with this Section is separate from, and in addition to, the disclosures required by Sections III and IV, infra.

## II.  SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide a simple mechanism for the consumer to:   (1) avoid being Charged, or Charged an increased amount, for the good or service; and (2) immediately stop any recurring Charges.   Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s).   In addition:

A.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendant must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the product or service and to immediately stop all further Charges.

B.      For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendant must maintain a telephone number and a postal address that consumers can easily use to cancel the product or

service and to immediately stop all further Charges.   Defendant must assure that all calls to this

telephone number shall be answered during normal business hours and that mail to the postal

address is retrieved regularly.

### III.   REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service with a Negative Option Feature, are

permanently restrained and enjoined from:

A.      Representing directly or indirectly, expressly or by implication, that any good or service

that includes a Negative Option Feature is being offered on a free, trial, no obligation, reduced, or

discounted basis, without disclosing Clearly and Conspicuously, and in Close Proximity to, any

such representation:

1.      The extent to which the consumer must take affirmative action(s) to avoid any

Charges:   a) for the offered good or service, b) of an increased amount after the trial or

promotional period ends, and c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged and, if applicable,

the frequency of such Charges unless the consumer timely takes steps to prevent or stop such

Charges; and

3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively

act in order to stop all recurring Charges.

B.      Failing to send the consumer:

1.      Immediately after the consumer's submission of an online order, written confirmation of the transaction by email.   The email must contain a subject line reading "Order Confirmation" along with the name of the product or service and Clearly and Conspicuously disclose the following information:

a)      The extent to which the consumer must take affirmative action(s) to avoid any Charges:   1) for the offered good or service, 2) of an increased amount after the trial or promotional period ends, and 3) on a recurring basis;

b)      The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

c)      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

d)      The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

e)      A description of the good or service;

f)      Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good; and

g)      The simple cancellation mechanism to stop all recurring Charges, as required by Section II.

The email may contain product shipment tracking information.   It may not contain any upsells, additional product or service offers, or other advertising or marketing; and

2.      Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail.   The email or letter must Clearly and Conspicuously disclose all the information required by Subsection III.B.1.   The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else.   The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, Defendant's return address, and postage.   The email or letter may contain product shipment tracking information.   It may not contain any upsells, additional product or service offers, or other advertising or marketing.

## IV.   OBTAINING EXPRESS INFORMED CONSENT

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Defendant first obtains the express informed consent of the consumer to do so. To obtain express informed consent, Defendant must:

A.      For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer.   Defendant shall disclose Clearly and Conspicuously, and in Close Proximity to such check box, signature, or substantially similar method of affirmative consent,

only the following, with no additional information:

    1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:   a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

    2.      The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

    3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.     For all oral offers, prior to obtaining any Billing Information from the consumer:

    1.      Clearly and Conspicuously disclose the information contained in Subsection III.B.1; and

    2.      Obtain affirmative unambiguous express oral confirmation that the consumer:   a) consents to being Charged for any good or service, including providing, at a minimum, the last four (4) digits of the consumer's account number to be Charged, b) understands that the transaction includes a Negative Option Feature, and c) understands the specific affirmative steps the consumer must take to prevent or stop further Charges.

For transactions conducted through Telemarketing, Defendant shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in Subsection III.B.1.   Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## V. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of One Million, Three Hundred and Seventy Eight Thousand, Six Hundred and Fifty Four Dollars and Eighty Five Cents ($1,378,654.85) is entered in favor of the Commission against Defendant as equitable monetary relief.

B.      Defendant is ordered to pay to the Commission, one (1) year from the entry date of this Order, the amount of One Million, Three Hundred and Seventy Eight Thousand, Six Hundred and Fifty Four Dollars and Eighty Five Cents ($1,378,654.85), less any amount of money that Defendant already has refunded and transferred to Eligible Customers for Forfeited Store Credit (i.e.,amounts distributed and refunded through reverse charges made to Eligible Customers' credit cards or through checks issued by Defendant) pursuant to Section VII of this Order or a State Settlement Agreement prior to that date, plus any interest accrued since the entry date of this Order on monies held in escrow pursuant to this Order.   Defendant stipulates that it has placed in escrow with a third-party escrow agent the amount of $1,378,654.85 for no purpose other than securing refunds of Forfeited Store Credit to Eligible Customers in accord with this Order, and pursuant to any State Settlement Agreement, with payment of the undistributed remainder, if any, to the Commission.

C.      The agreement governing the escrow fund must provide that:   1) the escrow account is established for the purposes of securing

redress for Forfeited Store Credit to Eligible Customersand reimbursing Defendant for amounts it has refunded directly to Eligible Customers pursuant to this Order; 2) Defendant may only withdraw funds from the escrow account equal to amounts it has successfully refunded to Eligible

Customers through reverse charges made to Eligible Customers' credit cards and through checks sent to and negotiated by Eligible Customers; 3) the escrow account transfers all remaining funds (less any amounts Defendant refunded to Eligible Customers through reverse charges made to Eligible Customers' credit cards and through checks sent to and negotiated by Eligible Customers, for which Defendant has not already received reimbursement from the escrow account), including any interest that has accrued in the escrow account, to the Commission at the end of the eligibility period, which runs for twelve (12) months after the entry date of the Order; and 4) as many Eligible Customers as practicable receive refund payments.

If an agreement governing an escrow account funded pursuant to Subsection V.C above ceases to comply with any of the criteria stated above, or such escrow account ceases to be administered in compliance with all of the criteria stated above, Defendant must immediately pay the escrowed amount directly to the Commission pursuant to Subsection V.B above.

D.      No other amounts will be credited, offset against, or reimbursed or deducted from the amount to be refunded to Eligible Customers and/or paid to the Commission, including: 1) amounts paid by Defendant for the administration or implementation of refunds of Forfeited Store Credit; 2) amounts paid by Defendant on refund checks negotiated more than a year from the entry date of this Order; 3) goods or services provided by Defendant to Eligible Customers; and 4) penalties, fines, or any other assessments or liabilities imposed under a State Settlement Agreement.

E.      All payments to the Commission must be made by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

## VI.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendant acknowledges that its Taxpayer Identification Number or Employer Identification Number, which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.       All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint.   Any

money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII.   NOTICES AND REFUNDS TO CUSTOMERS

IT IS FURTHER ORDERED that Defendant must notify and provide a refund of Forfeited Store Credit to Eligible Customers as set forth below:

A.   Defendant must identify all Eligible Customers who had a Forfeited Store Credit as soon as possible.

1.   Such Eligible Customers, and their contact information, must be identified to the extent such information is in Defendant's possession, custody or control, or can be obtained by the Defendant, including from third parties such as Defendant's payment processor(s) and information received from customers themselves.

2.   Eligible Customers include those identified at any time including after Defendant's execution of the Agreement through the eligibility period, which runs for twelve (12) months after the entry date of the Order.

B.   Defendant must send each Eligible Customer a refund notice and provide a refund to each Eligible Customer of the full amount of their Forfeited Store Credit.   Defendant will not access the escrow fund to provide such refunds, but may withdraw funds from the escrow fund equal to amounts it has successfully refunded to Eligible Customers through reverse charges made to Eligible Customers' credit cards and through checks sent to and negotiated by Eligible Customers.   Defendant must notify and provide a refund to identified Eligible Customers within six (6) months after the date of this Order, and any Eligible Customers identified thereafter within

thirty (30) days of their identification, not to exceed twelve (12) months after the date of this Order.

1.      Defendant may attempt to refund each Eligible Customer electronically, transmitting the full amount of the Forfeited Store Credit directly to the Eligible Customer's last-known valid bank account or other financial account on file with Defendant, including by effectuating a reverse charge on each Eligible Customer's credit card.

2.      For each electronic refund, Defendant must cause a refund notice to be sent to that Eligible Customer's last-known email address at least three (3) days before the full refund is transmitted.   Refund notices for electronic refunds must be in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee.

3.      If the attempted full direct electronic refund is not successful within ten (10) days of the attempt, Defendant must cancel the attempted electronic refund and mail or cause to be mailed a one-page refund notice containing, at the bottom of the notice, a refund check for the full amount of the Forfeited Store Credit to the Eligible Customer.

4.      For notices sent by email, if the emailed refund notice is returned as undeliverable or is otherwise not successfully delivered, Defendant must mail or cause to be mailed the refund notice in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee.

5.      Defendant must provide a refund to each Eligible Customer of the full amount of their Forfeited Store Credit by mailed check if the Eligible Customer does not receive a refund electronically.   Refund notices for non-electronic refunds must be in the form shown in Attachment B, or in such form approved in writing by the Commission or its designee.   The

envelope containing the refund notice and check must be in the form shown in Attachment C.

6.      For notices sent by mail, such mailing must be sent by first-class mail, postage prepaid, address correction service requested with forwarding and return postage guaranteed. For any mailings returned as undeliverable, Defendant must use standard address search methodologies such as re-checking Defendant's records and the Postal Service's National Change of Address database and re-mail to the corrected address within 7 days.

7.      The face of each refund check must clearly and conspicuously state:  "Please cash or deposit this check within 60 days or it may no longer be good."  Defendant may void any checks that have not been negotiated after 67 days from the date the checks were originally mailed.

8.      The mailing or emailing of notices must not include any information not specified in this Order, including but not limited to any enclosures or any written statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service.

C.      Defendant's notices must include a toll-free telephone number and an email address dedicated to responding to redress inquiries.   Defendant must respond promptly and accurately to such inquiries, including:   1) whether the consumer is an Eligible Customer; 2) and if so, the redress required by the Order and steps taken for that customer.   Defendant must not sell or attempt to sell any good or service through the refund program, including in response to consumer inquiries relating to refund eligibility.

D.      Defendant must report on its notification and refund program under penalty of perjury:

1.      Defendant must submit a report thirty (30) days after the entry of this Order,

summarizing its compliance as of that date.   Defendant also must submit a report (1) year after the entry of this Order, summarizing its compliance as of that date and reporting the following totals:  1) Eligible Customers identified; 2) refunds sent electronically (including through reverse charges to credit cards); 3) refund checks mailed; 4) refund checks negotiated; and 5) the amount paid to the Commission at the end of the eligibility period.

2.      If a representative of the Commission requests any information regarding the program, including but not limited to underlying customer refund data, Defendant must submit it within 10 days of the request.

E.      The judgment amount shall become immediately due and payable to the Commission if Defendant fails to timely comply with the requirements of Section VII.B.

## VIII.   CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.   Defendant represents that it has provided this redress information to the Commission.   If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## IX.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.      Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Defendant must deliver a copy of this Order to:   (1) all principals, officers, directors, and LLC managers and members; (2) all managers who supervise employees, agents, and representatives who participate in the online marketing or telemarketing of apparel or sell or provide any good or service with a negative option feature; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Defendant must:   (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising,

marketing, and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.       For 20 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

(a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.       Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.       Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:   "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:   _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.       Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:   Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.   The subject line must begin:   *FTC v. Adoreme, Inc.*

## XI.  RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.   Specifically, Defendant, in connection with the online marketing of apparel, must create and retain the following records:

A.        accounting records showing the revenues from all goods or services sold;

B.        personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:   name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.        records of all consumer complaints and refund requests concerning the subject matter of the Order, whether received directly or indirectly, such as through a third party, and any response;

D.        all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.        a copy of each unique advertisement or other marketing material, other than social media advertisements.   Defendant must retain each substantively unique social media advertisement. For purposes of this Subsection, an advertisement or marketing material is "substantively unique" if it conveys different claims than other material, or conveys claims differently than other material.

## XII.  COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, and any failure to transfer any assets as required by this Order:

A.        Within 14 days of receipt of a written request from a representative of the Commission, Defendant must:   submit additional compliance reports or other requested information, which

must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defendant.   Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview.   The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this 30 day of November , 2017.

UNITED STATES DISTRICT JUDGE

SO STIPULATED AND AGREED:

FOR PLAINTIFF:

Date: 11/20/2017

Alejandro G. Rosenberg, Attorney
Federal Trade Commission
Washington, DC 20580
202-326-2698 (phone)
202-326-3197 (fax)
arosenberg@ftc.gov

FOR DEFENDANT:

Date: 8-11-2017

Antony Kim, Esq.
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005
202-339-8493
202-270-7590 (fax)
akim@orrick.com

Mark Mermelstein Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
mmermelstein@orrick.com

Counsel for Adoreme, Inc.

DEFENDANT:   Adoreme, Inc.

Date: 2017/08/11

Morgan Hermand-Waiche, as
an owner and officer of Adoreme, Inc.

Page 22 of 22

SO ORDERED:

HON. ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE

11-30-17